**Affirmed and Opinion filed April 30, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00570-CV

---

## IN THE MATTER OF R.A.

---

**On Appeal from the County Court at Law No. 3
Fort Bend County, Texas
Trial Court Cause No. 07-CJV-013620**

---

# O P I N I O N

This case involves an appeal from a juvenile court's order requiring a person who had been found to have committed aggravated sexual assault as a juvenile to privately register as a sex offender under article 62.352(b)(2) of the Texas Code of Criminal Procedure. We affirm the trial court's order requiring private registration. We conclude that we lack appellate jurisdiction over a subsequent order of the trial court.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant R.A. was alleged to have engaged in delinquent conduct by committing the offenses of aggravated sexual assault and indecency with a child. At the time of these offenses, R.A. was fourteen years old and the victim was six years old. R.A. stipulated to the truth of the allegations in the petition. In March 2008, when R.A. was fifteen years old, the trial court, sitting as a juvenile court (hereinafter the "Juvenile Court"), signed an adjudication order in which it found that R.A. had engaged in delinquent conduct. On the same day, after a disposition hearing, the trial court signed a disposition order in which the Juvenile Court found that R.A. was in need of rehabilitation and that the protection of the public and of R.A. required a disposition to be made. The Juvenile Court placed R.A. on probation for two years, subject to various conditions.

On the same day the Juvenile Court signed the disposition order, the Juvenile Court also signed an "Order Deferring Sex Offender Registration." In this order, the Juvenile Court deferred its decision as to whether R.A. should be required to register as a sex offender under Chapter 62 of the Code of Criminal Procedure.[1] The Juvenile Court stated that the period of deferment would expire upon R.A.'s completion of probation or release or parole by the Texas Youth Commission.[2] The record indicates that R.A.'s probation ended in March 2010, when he was seventeen years old.

In October 2010, the State filed a motion in which it requested that the

---

[1] Unless otherwise specified, all statutory references in this opinion are to the Texas Code of Criminal Procedure.

[2] The record reflects that R.A. was not committed to the Texas Youth Commission.

Juvenile Court order R.A. to register as a sex offender pursuant to subchapter H of Chapter 62. The State asserted that registration protects the public and that any potential increase in protection of the public resulting from registration of R.A. is not clearly outweighed by the anticipated substantial harm to R.A. and R.A.'s family resulting from registration. R.A. objected to and opposed the State's motion, asserting that the Juvenile Court's jurisdiction over R.A. ended when he completed probation in March 2010, and that the State waived its right to request registration by failing to request an order requiring registration until seven and a half months after R.A. completed probation.

The Juvenile Court held a hearing on the State's motion in February 2011. At the hearing, the State called as witnesses R.A.'s probation officer, the probation department's psychology supervisor, and a therapist who ran a treatment group that R.A. attended. The probation department recommended that R.A. be required to register. R.A. called as witnesses his mother, grandmother, grandfather, and his private therapist. His relatives testified that he had made marked improvements in his behavior and that registration would be harmful. His therapist testified that R.A. had made lots of changes and that he was not a threat to society. His therapist recommended that he not be required to register.

In June 2011, when R.A. was eighteen years old, the Juvenile Court signed an order in which it found as follows:

- The protection of the public would be increased by R.A. registering under Chapter 62;
- Any potential increase in protection of the public resulting from registration of R.A. is not clearly outweighed by any anticipated substantial harm to R.A. and R.A.'s family that would result from registration under Chapter 62;
- R.A. did not successfully participate in or complete the required sex-

3

offender-treatment program; and

- The interests of the public require R.A. to register as a sex offender under Chapter 62.

The Juvenile Court ordered that R.A. register as a sex offender under Chapter 62 and that this sex-offender registration be private. In addition, the trial court ordered that "said registration shall be reconsidered by this Court 12 months from the date of this Order." R.A. appealed this order (the "First Order"), generating this appeal.[3]

While R.A.'s appeal was pending in this court, the trial court, acting *sua sponte*, held a hearing to consider whether it should change the registration requirement in the First Order. The second hearing occurred in March 2013, twenty months after the Juvenile Court signed the First Order. In April 2013, when R.A. was twenty years old, the Juvenile Court signed an order (the "Second Order") in which the court ordered R.A. to continue to register privately as a sex offender. R.A. has not filed a notice of appeal from the Second Order.

Before the Juvenile Court issued the Second Order, this court granted the State and R.A.'s request that this appeal be abated pending the trial court's second hearing and order, given that the Second Order might moot this appeal. After the trial court signed the Second Order, this appeal was reinstated. The State and R.A. have filed supplemental briefing. In his supplemental briefing, R.A. continues to assert his prior challenges to the First Order. In addition, R.A. challenges the Second Order, arguing that the Juvenile Court abused its discretion in admitting certain evidence at the second hearing and in ordering that R.A. continue with the

---

[3] This appeal is under article 62.357(b). *See* Tex. Code Crim. Proc. Ann. art. 62.357(b) (West, Westlaw through 2013 3d C.S.).

private sex-offender registration.

## I. JURISDICTION

Before addressing R.A.'s issues, we first must address this court's jurisdiction over the appeal. R.A. filed a notice of appeal in June 2011. Two days later, the trial court signed the First Order. In that order, the trial court stated that in twelve months it would reconsider its order requiring private registration by R.A. Consistent with this statement, the trial court, acting *sua sponte*, held a hearing in March 2013, to consider whether it should change the registration requirement in the First Order. In April 2013, the trial court signed the Second Order, declining to change the registration requirement in the First Order. Neither R.A. nor the State filed a notice of appeal from the Second Order.

### A. Appellate Jurisdiction over the First Order

R.A. asserts that the Juvenile Court lacked jurisdiction over the First Order. If the Juvenile Court lacked jurisdiction over the First Order, this court lacks jurisdiction over this appeal from the First Order. *See Curry v. Harris County Appraisal District*, 434 S.W.3d 815, 820 & n.2 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A juvenile adjudicated of delinquent conduct based on the offense of aggravated sexual assault or the offense of indecency with a child generally is required to register as a sex offender. *See* Tex. Code Crim. Proc. Ann. arts. 62.001(5), 62.051 (West, Westlaw through 2013 3d C.S.). But, the person adjudicated of such delinquent conduct may move the juvenile court in which he was adjudicated for an exemption from the registration requirement. Tex. Code Crim. Proc. Ann. art. 62.351(a) (West, Westlaw through 2013 3d C.S.). If such a motion is filed, the juvenile court shall conduct a hearing to determine whether the interests of the public require registration under Chapter 62. Tex. Code Crim.

5

Proc. Ann. art. 62.351(a) (West, Westlaw through 2013 3d C.S.). After such a hearing, the juvenile court shall enter an order exempting the movant from registration under Chapter 62 if the court determines that (1) the protection of the public would not be increased by registration of the movant under this chapter; or (2) any potential increase in protection of the public resulting from registration of the respondent is clearly outweighed by the anticipated substantial harm to the movant and the movant's family that would result from registration under Chapter 62. Tex. Code Crim. Proc. Ann. art. 62.352(a) (West 2006). After this hearing, the juvenile court also may enter an order in which the court (1) defers a decision on requiring registration under Chapter 62 until the movant has completed treatment for the movant's sexual offense as a condition of probation or while committed to the Texas Youth Commission; or (2) requires the movant to register as a sex offender but provides that the registration information is not public information and is restricted to use by law enforcement and criminal justice agencies, the Council on Sex Offender Treatment, and public or private institutions of higher education. *See id*. art. 62.352(b).

If the juvenile court enters an order in which it defers a decision on requiring registration, the court retains discretion and jurisdiction to require, or exempt the movant from, registration under Chapter 62 "at any time during the treatment or on the successful or unsuccessful completion of the treatment," except that during the period of deferral, registration may not be required. *Id*. art. 62.352(c). Following successful completion of treatment, the movant is exempted from registration under this chapter unless a hearing under this subchapter is held on motion of the state, regardless of whether respondent is eighteen years of age or older, and the court determines the interests of the public require registration. *See id*.

6

On the same day the Juvenile Court signed the disposition order, the Juvenile Court also signed a deferral order, stating that the State and R.A. both agreed that the court should defer its decision as to whether R.A. should be required to register as a sex offender under Chapter 62 until after R.A. had participated in or completed a sex-offender treatment program while on court-ordered probation. The Juvenile Court deferred its decision as to whether R.A. should be required to register as a sex offender under Chapter 62 until R.A. had participated in or completed a sex-offender treatment program while on probation or while committed to the Texas Youth Commission, if ever so committed. The Juvenile Court stated that the period of deferment would expire upon R.A.'s completion of probation or release or parole by the Texas Youth Commission. In the order, the Juvenile Court also stated that it retained discretion to require or excuse registration at any time during the treatment program or upon its successful or unsuccessful completion. We conclude that the trial court had jurisdiction to render this order, which was a valid order under article 62.352(b)(1), in which the Juvenile Court deferred consideration of this issue until R.A.'s completion of probation or release or parole by the Texas Youth Commission. *Id.* art. 62.352(b)(1). R.A. was not committed to the Texas Youth Commission, and the record indicates that he completed probation in March 2010. R.A. does not contend otherwise; rather, he argues that the Juvenile Court lost jurisdiction because the State did not move the Juvenile Court to decide whether R.A. should be required to register as a sex offender under Chapter 62 until seven and a half months after R.A. completed probation and the deferral period ended.

We conclude that the State filed its motion under article 62.352(c). *Id.* art. 62.352(b)(1). We now address whether the Juvenile Court had jurisdiction to rule on this motion and to decide whether R.A. should be required to register as a sex-

offender under Chapter 62 in June 2011, more than fifteen months after R.A. completed probation and after R.A. had turned eighteen years old.

Before we address this specific issue, we consider the decision of the Supreme Court of Texas in *In re N.J.A.* and general principles regarding the jurisdiction of a juvenile court. *See In re N.J.A.*, 997 S.W.2d 554 (Tex. 1999). In *In re N.J.A.*, the high court concluded that a juvenile court is not a court of general jurisdiction. *See id*. at 555. The *N.J.A.* court construed the version of Family Code section 54.05(b) that was applicable to that case to mean that a juvenile court lacked jurisdiction to conduct a disposition or adjudication hearing after the respondent is eighteen years old. *See id*. The *N.J.A.* court concluded that, when a respondent turns eighteen, the juvenile court's jurisdiction is limited to transferring the case to the appropriate district court or criminal district court or dismissing the case. *See id*. at 555–56. The *N.J.A.* court did not address Family Code section 51.042, which then, as now, provided that if a child does not object to the juvenile court's lack of jurisdiction due to the child's age at the adjudication hearing or discretionary-transfer hearing, the child waives the right to object to the juvenile court's lack of jurisdiction based on the child's age at a later hearing, or on appeal. *See id*. The *In re N.J.A.* court held that, because the respondent in that case turned eighteen before the disposition hearing, the juvenile court's jurisdiction was limited to transferring the case to the appropriate district court or criminal district court or to dismissing the case but that the court lacked jurisdiction to render an adjudication or disposition order. *See id*.

It might appear that the *In re N.J.A.* court concluded that once a respondent turns eighteen, the juvenile court only has jurisdiction to transfer the case to the appropriate district court or criminal district court or to dismiss the case. *See id*.

8

The better reading of this precedent, however, is that the high court concluded that (1) juvenile courts are courts of limited jurisdiction, rather than general jurisdiction; (2) therefore, their jurisdiction must be based on an applicable statute; and (3) under the statutes applicable in *In re N.J.A.*, the juvenile court only had jurisdiction to transfer the case to the appropriate district court or criminal district court or to dismiss the case. *See id.*

Subsequent cases support this view of *In re N.J.A. See In re B.R.H.*, 426 S.W.3d 163, 166-68 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding); *In re T.A.W.*, 234 S.W.3d 704, 705 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). In *In re T.A.W.*, the adjudication hearing did not begin until after the respondent had turned eighteen. *See In re T.A.W.*, 234 S.W.3d at 705. This court cited *In re N.J.A.* for the proposition that, although a juvenile court does not lose jurisdiction when a juvenile turns eighteen, such jurisdiction is *generally* limited to either transferring the case under Family Code section 54.02(j) or dismissing the case. *See id.* Although the juvenile court in *In re T.A.W.* conducted the adjudication hearing after the respondent had turned eighteen, this court did not conclude, as the *In re N.J.A.* court did, that the juvenile court lacked jurisdiction to conduct an adjudication hearing or render an adjudication order; rather, this court affirmed the trial court's adjudication order after concluding that the respondent had waived any objection to the trial court's lack of jurisdiction by failing to object at the adjudication hearing, as required by Family Code section 51.042. *See* Tex. Family Code Ann. § 51.042 (West, Westlaw through 2013 3d C.S.). Thus, the *In re T.A.W.* court interpreted *In re N.J.A.* as requiring that the applicable statutes be construed to determine whether the trial court's order could be reversed for lack of jurisdiction. *See In re T.A.W.*, 234 S.W.3d at 705.

Likewise, in *In re B.R.H.*, the court of appeals held that the juvenile court did not abuse its discretion in refusing to dismiss, and retaining for adjudication, a petition alleging delinquent conduct against a respondent who had turned eighteen. *See In re B.R.H.*, 426 S.W.3d at 166-68. The court based its ruling on Family Code section 51.0412, which was enacted after *In re N.J.A.* was decided. *See* Tex. Family Code Ann. § 51.0412 (West, Westlaw through 2013 3d C.S.) (providing that a juvenile court retains jurisdiction over a person, without regard to the age of the person, who is a respondent in an adjudication proceeding, a disposition proceeding, a proceeding to modify disposition, a proceeding for waiver of jurisdiction and transfer to criminal court under section 54.02(a), or a motion for transfer of determinate sentence probation to an appropriate district court under certain circumstances). The *In re B.R.H.* court correctly concluded that to the extent *In re N.J.A.* indicates that a juvenile court lacks jurisdiction to conduct a disposition or adjudication hearing that falls within the scope of section 51.0412 after the respondent turns eighteen, Family Code section 51.0412 supersedes that decision. *See* Tex. Family Code Ann. § 51.0412; *In re B.R.H.*, 426 S.W.3d at 167.

A juvenile adjudicated of delinquent conduct based on one of the offenses listed in article 62.001(5) (including the offenses of aggravated sexual assault and indecency with a child) is required to register as a sex offender unless exempted from registration under subchapter H of Chapter 62. *See* Tex. Code Crim. Proc. Ann. arts. 62.001(5), 62.051, 62.351, *et seq*. Under Texas Family Code section 54.05(a), various dispositions, including R.A.'s disposition, may not be modified on or after the child's eighteenth birthday. *See* Tex. Family Code Ann. § 54.05(a), 54.05(a) (West, Westlaw through 2013 3d C.S.). Under Texas Family Code section 54.05(b), various dispositions, including R.A.'s disposition, automatically terminate on the child's eighteenth birthday. *See* Tex. Family Code Ann. §

54.05(b). Nonetheless, the duty to register as a sex offender arises from Chapter 62, and R.A.'s duty to register or any exemption therefrom is not part of the disposition that terminated on R.A.'s eighteenth birthday.[4]

Though it may be unusual for the Legislature to expand the jurisdiction of a juvenile court by enacting new provisions of the Code of Criminal Procedure, that is what has occurred in subchapter H of Chapter 62. *See* Tex. Code Crim. Proc. Ann. art. 62.351, *et seq.*; *In re J.M.*, 2011 WL 6000778, at *1–3. The Legislature enacted these statutes after the Supreme Court of Texas's decision in *In re N.J.A.* *See In re N.J.A.*, 997 S.W.2d at 555–56. Thus, if the Juvenile Court acted under the authority of article 62.352 when it issued the First Order, the Juvenile Court had jurisdiction to do so. *See* Tex. Code Crim. Proc. Ann. art. 62.352; *In re J.M.*, 2011 WL 6000778, at *1–3. To the extent *In re N.J.A.* indicated that after the respondent turns eighteen, a juvenile court lacks jurisdiction to determine whether a respondent should be required to register as a sex offender, subchapter H of

---

[4] *See* Tex. Code Crim. Proc. Ann. art. 62.351(a) (stating that "[d]uring *or after* disposition of a case under Family Code section 54.04 for adjudication of an offense for which registration is required under this chapter, the juvenile court on motion of the respondent shall conduct a hearing to determine whether the interests of the public require registration under this chapter. The motion may be filed and the hearing held *regardless of whether the respondent is under 18 years of age*") (emphasis added); *id.* art. 62.352(c) (stating that "[f]ollowing successful completion of treatment, the respondent is exempted from registration under this chapter unless a hearing under this subchapter is held on motion of the prosecuting attorney, *regardless of whether the respondent is 18 years of age or older*, and the court determines the interests of the public require registration") (emphasis added); *id.* art. 62.353(a),(b) (providing that a person who has registered as a sex offender for an adjudication of delinquent conduct, regardless of when the delinquent conduct or the adjudication for the conduct occurred, may file a motion in the adjudicating juvenile court for a hearing seeking exemption from registration as provided by article 62.351 or an order that the registration be private, regardless of whether the person, at the time of filing the motion, is eighteen years of age or older); *In re J.M.*, No. 12-10-00159-CV, 2011 WL 6000778, at *1–3 (Tex. App.—Tyler Nov. 23, 2011, no pet.) (holding that, even following respondent's unsuccessful completion of treatment, the State may move for a hearing under subchapter H as to whether respondent should be required to register as a sex offender) (mem. op.).

11

Chapter 62 has superseded that decision. *See* Tex. Family Code Ann. § 51.0412; *In re B.R.H.*, 426 S.W.3d at 167. To the extent subchapter H of Chapter 62 provides the juvenile court authority to act and *In re N.J.A.* indicates that the juvenile court lacks jurisdiction because the respondent is eighteen or older, subchapter H of Chapter 62 has superseded *In re N.J.A. See* Tex. Code Crim. Proc. Ann. art. 62.351, *et seq*.; *In re B.R.H.*, 426 S.W.3d at 167; *In re J.M.*, 2011 WL 6000778, at *1–3.

Thus, we must determine whether the Juvenile Court acted under the authority of article 62.352. This statute provides in pertinent part as follows:

> (b) After a hearing under Article 62.351 or under a plea agreement described by Article 62.355(b), the juvenile court may enter an order:
>
> (1) deferring decision on requiring registration under this chapter until the respondent has completed treatment for the respondent's sexual offense as a condition of probation or while committed to the Texas Juvenile Justice Department; or
>
> (2) requiring the respondent to register as a sex offender but providing that the registration information is not public information and is restricted to use by law enforcement and criminal justice agencies, the Council on Sex Offender Treatment, and public or private institutions of higher education.
>
> (c) If the court enters an order described by Subsection (b)(1), the court retains discretion and jurisdiction to require, or exempt the respondent from, registration under this chapter at any time during the treatment or on the successful or unsuccessful completion of treatment, except that during the period of deferral, registration may not be required. Following successful completion of treatment, the respondent is exempted from registration under this chapter unless a hearing under this subchapter is held on motion of the prosecuting attorney, regardless of whether the respondent is 18 years of age or older, and the court determines the interests of the public require registration. Not later than the 10th day after the date of the respondent's successful completion of treatment, the treatment

12

provider shall notify the juvenile court and prosecuting attorney of the completion.

Tex. Code Crim. Proc. Ann. art. 62.352. We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id*. If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id*.

Under the unambiguous language of article 62.352(c), the Juvenile Court had discretion and jurisdiction to require, or exempt R.A. from registration under Chapter 62 "on the successful or unsuccessful completion of treatment." Tex. Code Crim. Proc. Ann. art. 62.352. The statute provides that, following successful completion of treatment, the respondent is exempted from registration as a sex offender unless a hearing under subchapter H of Chapter 62 is held on the motion of the prosecuting attorney. *See id*. Though article 62.352(c) provides jurisdiction to the juvenile court to require registration or exempt from registration on the successful or unsuccessful completion of treatment, the statute does not mention a presumed outcome or motion by the State if the respondent unsuccessfully completes treatment. *See id*. Nonetheless, a sister court has held that, even if the respondent unsuccessfully completes treatment, the State still may move for a hearing under article 62.352(c) and the juvenile court still may require registration

13

under this statute. *In re J.M.*, 2011 WL 6000778, at \*1–3. We agree that, even if R.A. unsuccessfully completed treatment, the State still may move for a hearing under article 62.352(c) and the juvenile court still may require registration under this statute. *See* Tex. Code Crim. Proc. Ann. art. 62.352(c); *In re J.M.*, 2011 WL 6000778, at \*1–3.

On appeal, R.A. asserts that he successfully completed treatment and that under article 62.352(c) he was exempted from registration as a sex offender unless a hearing was held on motion of the prosecuting attorney. According to R.A, he successfully completed treatment on March 14, 2010. The State did not move for a hearing until October 29, 2010, seven and a half months later. R.A. asserts that the State's motion had to be filed "very soon after" March 14, 2010, for the Juvenile Court to have jurisdiction under article 62.352(c). Because seven and a half months later is not "very soon after," R.A. claims that the Juvenile Court no longer could exercise jurisdiction.

In the First Order, the Juvenile Court specifically found that R.A. "did not successfully participate in and/or complete the required sex-offender treatment program." R.A. has not challenged this finding on appeal. Even so, we need not decide whether R.A. successfully completed treatment because we conclude that, whether or not R.A. successfully completed treatment, the State still had the ability to file a motion requesting a hearing on the issue of whether R.A. should be required to register as a sex offender. *See* Tex. Code Crim. Proc. Ann. art. 62.352(c); *In re J.M.*, 2011 WL 6000778, at \*1–3.

As to the seven-and-a-half-month delay by the State in moving for a hearing, the interests of R.A. and of the public are best served by a motion by the State either during treatment or promptly thereafter. Nonetheless, the statute does not

14

provide a specific deadline for the State to file a motion or for a hearing to be held. We conclude that the seven-and-a-half month delay did not cause the Juvenile Court to lose jurisdiction to determine whether R.A. should be required to register as a sex offender. *See* Tex. Code Crim. Proc. Ann. arts. 62.351, 62.352(c); *In re J.M.*, 2011 WL 6000778, at *1–3 (holding that juvenile court had jurisdiction to require respondent to register privately as a sex offender, in case in which State did not file motion for hearing until four and a half months after respondent unsuccessfully completed treatment). We conclude that, under articles 62.351 and 62.352(c) the Juvenile Court had jurisdiction to determine whether R.A. should be required to register as a sex offender and whether this registration should be public or private. *See* Tex. Code Crim. Proc. Ann. arts. 62.351, 62.352(c); *In re J.M.*, 2011 WL 6000778, at *1–3.

The State has suggested that the appeal from the First Order may have become moot due to the issuance of the Second Order. As we explain below, the Second Order did not supersede the First Order. A determination by this court that the Juvenile Court erred in requiring R.A. to register privately as a sex offender would have a direct effect on R.A.'s potential criminal liability for failing to register. *See* Tex. Code Crim. Proc. Ann. arts. 62.102 (West, Westlaw through 2013 3d C.S.). R.A.'s appeal from the First Order is not moot.

**B.     Appellate Jurisdiction over the Second Order**

At the hearing in which the trial court issued the First Order, the Juvenile Court indicated it would revisit the issue in a year. Then, in the First Order, the Juvenile Court stated that its registration order would be "reconsidered" twelve months from the date of the First Order. R.A. timely appealed from the First Order. While R.A.'s appeal was pending in this court, the trial court, acting *sua*

*sponte*, held a hearing to consider whether it should change the registration requirement in the First Order. The second hearing occurred in March 2013, twenty months after the Juvenile Court signed the First Order. In April 2013, the Juvenile Court signed the Second Order, in which the court ordered R.A. to continue to register privately as a sex offender. Before the Juvenile Court issued the Second Order, this court granted the State's and R.A.'s request to abate this appeal pending the trial court's second hearing and order. R.A. has not filed a notice of appeal from the Second Order. After the trial court signed the Second Order, this court reinstated the appeal. A supplemental record relating to the Second Order has been filed with this court, and this court ordered the parties to file supplemental briefing.

R.A. filed a supplemental brief asserting issues challenging the Second Order. In its supplemental brief, the State questions whether this court has appellate jurisdiction to review the Second Order. R.A. asserts that this court has jurisdiction over the Second Order because he prematurely filed a notice of appeal or because the Second Order is a modification of the First Order under Texas Rule of Appellate Procedure 27.3.

R.A. argues that he did not need to file a second notice of appeal because his appeal from the First Order was a timely appeal of a final order. In the context of the procedures provided in subchapter H of Chapter 62, the First Order was a final order in which the Juvenile Court actually disposes of all claims and parties then before the court. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192, 200 (Tex. 2001) (providing that a judgment that issues without a conventional trial is final for purposes of appeal if it actually disposes of all claims and parties then before the court or states with unmistakable clarity that it is a final judgment). R.A. timely

16

appealed from the First Order, and this court has jurisdiction over this appeal and R.A.'s challenges to the First Order.[5]

R.A. asserts that, if the First Order is interlocutory, then R.A. filed an effective premature notice of appeal under Texas Rule of Appellate Procedure 27.1(a), but the First Order is a final order and R.A. filed a notice of appeal from the First Order, not the Second Order. Though R.A. perfected an appeal from the First Order by filing a premature notice of appeal under Rule 27.1(a) two days before the Juvenile Court rendered the First Order, we cannot construe this notice of appeal as a premature notice of appeal from the Second Order, which the trial court rendered twenty-one months later. *See* Tex. R. App. P. 27.1(a).

Texas Rule of Appellate Procedure 27.3 provides:

After an order or judgment in a civil case has been appealed, if the trial court modifies the order or judgment, or if the trial court vacates the order or judgment and replaces it with another appealable order or judgment, the appellate court must treat the appeal as from the subsequent order or judgment and may treat actions relating to the appeal of the first order or judgment as relating to the appeal of the subsequent order or judgment. The subsequent order or judgment and actions relating to it may be included in the original or supplemental record. Any party may nonetheless appeal from the subsequent order or judgment.

Tex. R. App. P. 27.3. In the Second Order, the trial court found that the interests

_____

[5] Because the First Order is a final order, Texas Rule of Appellate Procedure 29.6(a) does not provide a basis for appellate jurisdiction over the Second Order. *See* Tex. R. App. P. 29.6(a) (stating that "[w]hile an appeal from an *interlocutory order* is pending, on a party's motion or on the appellate court's own initiative, the appellate court may review the following: (1) a further appealable interlocutory order concerning the same subject matter; and (2) any interlocutory order that interferes with or impairs the effectiveness of the relief sought or that may be granted on appeal") (emphasis added).

of the public required that R.A. continue to register privately as a sex offender under Chapter 62 and that R.A.'s Texas Juvenile Sex Offender Risk Assessment, previously determined to be "high risk," should be reduced to "moderate risk." In the Second Order, the Juvenile Court then ordered that R.A. continue to register privately as a sex offender under Chapter 62 and that R.A.'s Texas Juvenile Sex Offender Risk Assessment should be reduced to "moderate risk."

The Second Order did not vacate or replace the Juvenile Court's First Order, nor did the Second Order modify the First Order. In the Second Order, the Juvenile Court evaluated whether or not the interests of the public required that R.A. continue to register privately as a sex offender at the time of the Second Order. The Juvenile Court did not address whether the interests of the public required that R.A. register privately as a sex offender at the time of the First Order or whether the First Order should be modified, vacated, or replaced. In the First Order, the trial court ordered R.A. to register privately as a sex offender under Chapter 62 and did not address R.A.'s Texas Juvenile Sex Offender Risk Assessment. In the Second Order, the trial court ordered R.A. to continue to register privately as a sex offender under Chapter 62 and reduced R.A.'s Texas Juvenile Sex Offender Risk to "moderate risk." Though the trial court may have modified R.A.'s risk assessment, that risk assessment was not contained in the First Order; therefore, the order reducing the risk assessment did not modify the First Order. Because the Juvenile Court did not modify, vacate, or replace the First Order in the Second Order, we conclude that this court does not have jurisdiction over the Second Order under Rule 27.3. *See* Tex. R. App. P. 27.3. Because no notice of appeal has been filed from the Second Order and because there is no other basis for this court to exercise appellate jurisdiction, we conclude that we lack appellate jurisdiction over the Second Order and R.A.'s issues challenging

that order.[6] *See Overka v. Bauri,* No. 14-06-00083-CV, 2006 WL 2074688 at *1 (Tex. App.—Houston [14th Dist.] Jul. 27, 2006, no pet.) (mem. op.).

## III.  ISSUES AND ANALYSIS

### A.  Did the trial court reversibly err in connection with the First Order?

In his first issue, R.A. asserts that the First Order should be reversed because the trial court committed procedural errors sufficient to cause an improper registration order.  Under this issue, R.A. argues that the trial court conducted the hearing on the State's motion in contravention of the plea agreement between R.A. and the State, and that the Juvenile Court erred in denying his request to withdraw the plea.  An appellate court reviews a respondent's challenge of an order requiring registration as a sex offender for procedural error and an abuse of discretion.  *See* Tex. Crim. Proc. Code Ann. art. 62.357(b) (West, Westlaw through 2013 3d C.S.).

### 1. Did the trial court err in conducting the hearing in contravention of the plea agreement between the State and R.A.?

R.A. argues that he had an "agreed stipulation and plea agreement" with the State that limited the period of decision making on registration to the time R.A. was in treatment and during probation.  According to R.A., the plea agreement exempted him from registration unless the State brought a motion to require registration within this time period.  R.A. relies on the language in the court's order deferring registration to support his argument.  He does not reference any other plea agreement and our record does not contain a separate plea agreement.

The court's order states in pertinent part:

---

[6] We do not address any issue relating to the Juvenile Court's jurisdiction to render the Second Order or the propriety of the Second Order.

[The State and R.A.] presently agreed to DEFER the issue of whether R.A. should be required to register as a sex offender pursuant to Chapter 62 of the Texas Code of Criminal Procedure until after such time as Respondent has participated in and/or completed a sex offender treatment program while on Court Ordered probation. Such parties further agreed that said deferment ends upon the completion of the child's probation or the child's release and/or parole by the Texas Youth Commission, if ever so committed.

The record reflects that R.A. and the State agreed to defer the issue of whether R.A. should be required to register as a sex offender pursuant to Chapter 62 until after such time as R.A. had participated in or completed a sex-offender treatment program while on court-ordered probation. As discussed above, the requirement that a respondent register under Chapter 62, or any exemption from this requirement, is not part of the respondent's disposition. *See* Tex. Code Crim. Proc. Ann. art. 62.351(a); *id.* art. 62.352(c); *id.* art. 62.353(a),(b); *In re J.M.*, No. 12-10-00159-CV, 2011 WL 6000778, at *1–3.

The language in this order reflects an agreement between the parties to defer the decision of whether R.A. should register as a sex offender. It articulates a time period during which registration will not be ordered, and it articulates the ending of that time period. The interval during which registration will not be ordered ends after R.A. completed probation. But, the order does not reflect that the parties agreed to limit the time period during which registration could be ordered after that date. Likewise, the language does not reflect any agreement by the State to limit the time period during which it could file a motion seeking an order requiring R.A. to register.

R.A. argues that the trial court's findings that it retained discretion to require or excuse registration at any time during the treatment program or upon successful

20

or unsuccessful completion show a limitation. First, this language does not reflect any agreement of the parties; it is a separate finding by the court. Second, that language does not limit the court's jurisdiction to any specific time period. Other than the order, R.A. does not point to any additional plea agreement that limited the State's ability to bring a motion. R.A.'s argument lacks merit.

## 2.    *Did the trial court err in denying R.A.'s request to withdraw his plea?*

R.A. argues that the trial court erred in denying his request to withdraw his plea because the State violated its alleged plea agreement regarding disposition. As discussed above, the requirement that a respondent register under Chapter 62, or any exemption from this requirement, is not part of the respondent's disposition. *See* Tex. Code Crim. Proc. Ann. art. 62.351(a); *id.* art. 62.352(c); *id.* art. 62.353(a),(b); *In re J.M.*, No. 12-10-00159-CV, 2011 WL 6000778, at *1–3. Even as to the agreement to defer the issue of whether R.A. should be required to register as a sex offender pursuant to Chapter 62, R.A. has not shown that the State violated that agreement. The court did not abuse its discretion or commit procedural error in denying R.A.'s request to withdraw his plea or stipulation of evidence under Family Code 54.03(j). *See* Tex. Fam. Code Ann. 54.03(j). Having concluded that the arguments under the first issue lack merit, we overrule that issue.

## B.    Did the trial court abuse its discretion in ordering R.A. to register privately as a sex offender?

In his second issue, R.A. asserts that the trial court erred in requiring him to register as a sex offender because any potential increase in protection to the public in requiring him to register was outweighed by the substantial harm to him. To be exempted, the respondent must show by a preponderance of the evidence that

protection of the public would not be increased by registration of the respondent or that any potential increase in protection of the public from registration is clearly outweighed by the anticipated substantial harm to the respondent and the respondent's family that would result from registration.[7] *Id.* art. 62.351(b), 62.352(a).

Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *See Baltzer v. Medina*, 240 S.W.3d 469, 475 (Tex. App.—Houston [14th Dist.] 2007, no pet.). There is no abuse of discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Id*.

At the hearing, the State presented evidence from R.A.'s probation officer, the probation department's psychology supervisor, and a therapist who ran a treatment group R.A. attended. The psychology supervisor testified that she evaluated R.A. in 2007 and diagnosed him with oppositional-defiant disorder, attention-deficit-hyperactivity disorder, borderline intellectual functioning, and provisional sexual abuse of a child, pending the outcome of R.A.'s adjudication. She noted that R.A. had a full scale IQ score of 55.

---

[7] R.A. argues that because he is exempt, unless the State brings a motion to require registration under article 62.352(c), this provision shifts the burden of proof to the State. We need not address this issue because we determine that even if this provision shifts the burden of proof, the State presented sufficient evidence to satisfy the burden of proof.

R.A.'s probation officer testified that R.A.'s behavior during detention was "uncontrollable." After R.A. completed detention, his school reported two concerning instances. In one instance, R.A. told a female student he could smell between her legs. In another instance, R.A. pushed a male into the bathroom. This instance concerned school personnel because there was a belief that R.A. instigated altercations to "get closer" to other males. The probation officer acknowledged a letter from R.A.'s school stating that after his probation ended, R.A. progressed at school and his discipline issues decreased. The probation department recommended public registration.

The therapist who ran R.A.'s treatment group testified that R.A. attended 42 group-therapy sessions with her between March 2008 and May 2009. The therapist testified that R.A. behaved appropriately and did his work throughout most of the program, but that he experienced a relapse in March 2009. The relapse involved an incident in which R.A. asked an eight-year-old male to "jack him off" while they were alone in the restroom together at the treatment group facility. The therapist questioned R.A. about the incident and R.A. admitted it had occurred. After the incident, R.A.'s mother withdrew him from the program. The therapist stated R.A. demonstrated aggressive and predatory behavior that she did not normally see in other children. Based on the repeated incidents, the therapist opined that R.A. was at a high risk to reoffend.

On cross-examination, the therapist admitted that R.A. was not supervised in the restroom at the time of the relapse even though he was supposed to be under 24-hour constant supervision at that time. She also acknowledged that there are concerns about treating people with lower mental capabilities in a big-group setting because they might not receive the individual attention they need. She testified

that a big group would be "more than eight, more than ten, 12" and admitted that R.A.'s group sometimes had more than a dozen juveniles.

R.A. presented testimony from his mother, grandmother, grandfather, and individual therapist. R.A.'s grandmother characterized the changes in R.A. between 2007 and the present as "day and night." She testified that she was proud of R.A.'s progress and had hired R.A.'s therapist to continue working with him after R.A.'s probation period ended. In her opinion, labeling R.A. as a sex offender and requiring him to register would unnecessarily prevent him from success. She believed R.A. would have a hard enough time in life because of his intellectual limitations. R.A.'s grandfather testified that R.A. had matured and had learned to cope with the issues by following the methods the doctor prescribed. R.A.'s grandfather stated that he thought R.A.'s life and career would be hampered by registration.

In her testimony R.A.'s mother described the teamwork put into place during R.A.'s probation, explaining how she had replaced the probation officer to continue the teamwork with R.A.'s school and counselor. She described R.A.'s progress at his school and the increasing freedoms he had gained because of that progress. She stated that recently R.A. had become very dependable and was taking pride in his schoolwork, especially in the culinary field. R.A.'s mother testified that R.A. now has career goals and has taken responsibility for his life. She stated that registration would hurt him by affecting his career and limiting where he attends school.

R.A.'s individual therapist described R.A.'s progress in therapy. He explained that R.A. had learned to identify how other people felt based on their emotions and had begun to learn how to relate to other human beings. He said

R.A.'s social skills had improved significantly and that R.A. had demonstrated good judgment in staying away from problems. According to the therapist, R.A. has identified his thinking errors. R.A.'s therapist opined that requiring registration could "destroy him." In his opinion, it would be an upward struggle for R.A. to become a semi-self-sustaining adult. The therapist thought that combining that struggle with the burden of being registered as a sex offender would erode R.A.'s motivation and would eradicate the progress made toward improving R.A.'s self-image. R.A.'s therapist stated that, in his professional judgment, requiring registration would be cruel. R.A.'s therapist stated, "I do not feel now or in the future he will be a threat to society. I really do not feel that."

R.A. argues that (1) the evidence did not show he was a current threat to the public, (2) the evidence supporting registration came from the beginning of his detention period, (3) the evidence presented did not outweigh evidence that registration would harm R.A., (4) ordering private registration negated the only argument that registration would protect the public, and (5) private registration does not increase protection to the public because the police database exists whether or not R.A. is required to register. In 2008, R.A. was adjudicated for having committed a serious sexual offense against a child. The State presented evidence that since that time there had been troubling incidents at school and a separate incident in which R.A. relapsed at his group-therapy treatment center. While the relapse occurred two years before the hearing, it is evidence that R.A. struggles with predatory behavior. This evidence is sufficient under the first inquiry to prove that R.A. is at risk to relapse and therefore registration will increase the public's protection. *See In the Matter of S.M.*, No. 12-12-00264-CV, 2013 WL 1046891, at *3 —S.W.3d—,— (Tex. App.—Tyler Mar. 13, 2013) (mem. op.) (finding sufficient evidence to require registration where juvenile relapsed).

25

R.A. presented compelling evidence that he has made significant progress, but the evidence also showed that R.A. has more progress to make. For example, the State presented testimony that an important component of treating sexual offenders is helping them to develop victim empathy. While R.A.'s therapist testified that he had made substantial social progress, including learning to identify people's emotions based on their facial expressions and learning how to greet people, the therapist also suggested that R.A. had further progress to make. He did not testify that R.A. had the ability to empathize with his victims. R.A.'s family members also conceded that R.A. has limitations that will make life extremely difficult. Everyone agreed that R.A. needed to continue therapy. While these limitations may make the requirement that he register as a sexual offender more difficult on R.A., they also show that R.A. is at an increased risk to reoffend and that makes the need to protect the public greater. *See In the Matter of B.M.*, No.2-07-153-CV, 2008 WL 281275, at *4 (Tex. App.—Fort Worth Jan. 31, 2008) (concluding there was sufficient evidence to support registration where juvenile's psychological evaluations showed high likelihood to reoffend and juvenile did not successfully complete treatment) (mem. op).

R.A. argues that the State did not refute his evidence that registration would hamper him and that the State did not show how private registration would protect the public. We do not doubt that registration will pose a hardship to R.A. At the same time, private registration restricts the information to use only by law-enforcement and criminal-justice agencies, the Council on Sex Offender Treatment, and public or private institutions of higher education. R.A. argues that private registration does not protect the public. But, private registration does provide notice to institutions of higher education. Given the concerns about incidents at R.A.'s high school and the evidence that he has further progress to

26

make, we conclude that the trial court did not abuse its discretion in implicitly determining that the protection of the public would be increased by registration and that any potential increase in protection of the public from registration was not clearly outweighed by the anticipated substantial harm to R.A. and R.A.'s family that would result from registration.[8] *See id*. Accordingly, R.A's second issue is overruled.

---

[8] R.A. argues that he is entitled to a reversal because there is no reporter's record from proceedings related to potential disciplinary issues that occurred during R.A.'s probation. He cites *Robinson v. Robinson*, 487 S.W.2d 713, 715 (Tex. 1972) and *Rogers v. Rogers*, 561 S.W.2d 172 (Tex. 1978), as standing for the proposition that an appellate court should reverse a judgment if a party, through no fault of his own, cannot obtain a record of prior proceedings. Under the *Rogers* line of cases, a party is at fault for the lack of a record if the party is present at a hearing and fails to object. *See Henning v. Henning*, 889 S.W.2d 611, 612–13 (Tex. App.— Houston [14th Dist.] 1994, writ denied). R.A. was present at the hearings and did not object to the failure to make a record. Accordingly, R.A. is not entitled to reversal on this ground.

## IV. CONCLUSION

We have jurisdiction over R.A.'s appeal from the First Order. But, R.A. did not appeal the Second Order, and we lack jurisdiction to review that order. The trial court had jurisdiction to render the First Order, and the State did not violate any agreement in filing its motion seven and a half months after R.A. completed probation. R.A. has not shown that the trial court committed procedural errors or abused its discretion in rendering the First Order.

The First Order is affirmed.


/s/        Kem Thompson Frost
                Chief Justice


Panel consists of Chief Justice Frost and Justices Donovan and Brown.