# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00652-CV

### In the Matter of A.C.

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-30,560, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A.C. appeals from the order of the district court, sitting as a juvenile court, requiring A.C. to register publicly as a sex offender. *See* Tex. Code Crim. Proc. art. 62.357(b) (authorizing appeal from order requiring sex offender registration). Raising one issue, A.C. argues that the juvenile court was unreasonable and arbitrary and abused its discretion because the State failed to show that his registration as a sex offender "would increase public safety." *See id.* art. 62.352(a) (stating that court shall enter order exempting registration if it determines that "protection of the public would not be increased by registration of the respondent under this chapter"); *see also id.* art. 62.351 (addressing motions and hearings generally concerning exemptions from registration for certain juveniles). Because we conclude that the juvenile court did not abuse its discretion, we affirm its order requiring A.C. to register publicly as a sex offender.

## BACKGROUND[1]

In October 2012, the juvenile court adjudicated A.C., who was born in December of 1996, delinquent for committing the offense of burglary of a habitation with attempted sexual assault. *See* Tex. Penal Code § 30.02(a)(3); *see generally In re A.C.*, No. 03-14-00804-CV, 2016 Tex. App. LEXIS 9523, at *1 (Tex. App.—Austin Aug. 30, 2016, no pet.) (mem. op.) (describing procedural background). The juvenile court assessed a determinate sentence of ten years, placed him on probation, and deferred its decision on whether to require A.C. to register as a sex offender pending completion of sex offender treatment. *See* Tex. Code Crim. Proc. art. 62.352(b)(1) (allowing juvenile court to defer decision on requiring registration "until the respondent has completed treatment for the respondent's sexual offense as a condition of probation or while committed to the Texas Juvenile Justice Department"). A.C.'s terms and conditions of probation required him to participate in sex offender treatment.

Subsequently, the State filed motions to modify disposition based on A.C.'s violations of the terms and conditions of his probation. Following a hearing in November 2014, the juvenile court granted the State's pending motion to modify disposition and committed A.C. to the custody of the Texas Juvenile Justice Department (TJJD) for a determinate period of ten years. *See In re A.C.*, 2016 Tex. App. LEXIS 9523, at *1 (affirming juvenile court's order modifying disposition and committing A.C. to custody of TJJD). Prior to his commitment to TJJD, A.C. had

---

[1] Because the parties are familiar with the facts of the case and its procedural history, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts primarily are taken from the evidence admitted at the hearing on the State's motion to require sex offender registration.

been placed in different treatment facilities for sex offenders. He was unsuccessfully discharged in September 2014 from one of the facilities "because he was not being open and honest about his sexual abuse history and victims"—"[h]e failed three different polygraphs." During his treatment at that facility, he disclosed "approximately 58 sexual contacts, of those, about 18 [were] categorized as rape" and he "admitted to engaging in voyeurism over 600 times, frottage 600–700 times, exposure 15+, bestiality on one occasion, sexual harassment 40–60 times, and stalking strangers from 100–150 times," but "[h]e was still being deceptive, even after admitting those."

In November 2015, following a hearing, the juvenile court denied the State's motion to transfer A.C., who was nineteen years old at that time, to the Texas Department of Criminal Justice Institutional Division for the 2012 offense and ordered him released to the Texas Department of Criminal Justice Parole Division. As part of his conditions of parole, he was placed in a "Super Intensive Supervision" Program, monitored by a parole officer who supervised sex offenders, placed on GPS monitoring, and ordered to participate in sex offender outpatient treatment. A.C. had completed treatment for sex offenders during his commitment at TJJD, and, a few days before the November 2015 hearing, the juvenile sex offender registration coordinator had notified the juvenile court that TJJD was not going to register or require A.C. to register as a sex offender. *See* Tex. Code Crim. Proc. art. 62.352(c).

Shortly after A.C. was released to the parole division in November 2015, the State filed a motion to require sex offender registration. *See id.* The hearing on the State's motion to require registration occurred in August 2017. The State's witness was the juvenile probation officer who was assigned A.C.'s case, and A.C.'s witness was his current parole officer. The evidence

3

showed that A.C. had engaged in criminal conduct as well as violating the terms of his parole after his release from the TJJD, that he had been placed in a "sanctions facility" and a drug treatment facility during this time period but released by the time of the hearing on the State's motion to require registration, and that he had not completed the outpatient sex offender treatment that was part of his conditions of parole.

Following the hearing, the juvenile court entered an order, finding that:

1)    The interests of the public require registration under Chapter 62 Texas Code of Criminal Procedure.

2)    The protection of the public would be increased by registration of the Respondent under Chapter 62 of the Texas Code of Criminal Procedure; and

3)    Any potential increase in protection of the public resulting from registration is not clearly outweighed by any anticipated substantial harm to the Respondent and the Respondent's family that would result from registration under Chapter 62 of the Texas Code of Criminal Procedure.

Based on these findings, the juvenile court ordered A.C. to register publicly as a sex offender as required by Chapter 62 of the Texas Code of Criminal Procedure. This appeal followed.

**Analysis**

In his sole issue, A.C. argues that "[t]he trial court was unreasonable, arbitrary and abused its discretion when it ordered [him] to register publicly as a sex offender when the State failed to show [his] registration as a sex offender would increase public safety." According to A.C., the record is factually insufficient to support the order because the State did not provide expert testimony that he "was a high risk to reoffend" and its witness "only" supervised A.C. prior to his

4

commitment to the TJJD.  He also argues that "increasing the protection of the public is clearly outweighed by the harm to [A.C.] and his family and is thus improper and an abuse of discretion."

An adjudication of delinquent conduct for burglary of a habitation with attempted sexual assault generally requires the juvenile to register as a sex offender.  *See* Tex. Code Crim. Proc. arts. 62.001(5) (defining "reportable conviction or adjudication" to include burglary of habitation with intent to commit assault), 62.051(a) (generally requiring registration of "person who has a reportable conviction or adjudication"); *In re J.M.*, No. 12-10-00159-CV, 2011 Tex. App. LEXIS 9284, at *2–3 (Tex. App.—Tyler Nov. 23, 2011, no pet.) (mem. op.) ("Generally, a person convicted of, or a child adjudicated as a delinquent for, a serious sexual offense is required to register with the law enforcement authority in the community where the person lives." (citing Tex. Code Crim. Proc. art. 62.051(a))); *see also* Tex. Penal Code § 30.02(a)(3).  In this situation, "the juvenile court may leave the registration requirement in place, it can exempt the respondent from registration, or it may defer a decision as to whether registration is required." *In re J.M.*, 2011 Tex. App. LEXIS 9284, at *3 (citing Tex. Code Crim. Proc. art. 62.352(a), (b)). Here the juvenile court deferred its determination on whether to require A.C. to register as a sex offender.  *See* Tex. Code Crim. Proc. art. 62.352(b)(1).

When a juvenile court defers its decision on whether to require registration as a sex offender, it "retains discretion and jurisdiction to require, or exempt the respondent from, registration under this chapter at any time during the treatment or on the successful or unsuccessful completion of treatment, except that during the period of deferral, registration may not be required." *Id.* art. 62.352(c).  Further, once the respondent successfully completes treatment, he or she is

exempt from registration under Chapter 62 unless a hearing is held on the prosecuting attorney's motion and "the court determines that the interests of the public requires registration." *Id.* When the juvenile court grants the prosecuting attorney's motion and requires registration, as is the case here, our standard of review on appeal is "whether the juvenile court committed procedural error or abused its discretion in requiring registration." *Id.* art. 62.357(b); *see In re C.B.*, No. 03-14-00028-CV, 2015 Tex. App. LEXIS 7234, at *14 (Tex. App.—Austin July 15, 2015, no pet.) (mem. op.) (describing applicable standard of review from order requiring sex offender registration).

A.C. does not raise procedural error but argues that the juvenile court abused its discretion. "Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily or unreasonably." *In re R.A.*, 465 S.W.3d 728, 742 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Under this standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error, but they are relevant factors in accessing whether the trial court abused its discretion. *Id.* (citing *Baltzer v. Medina*, 240 S.W.3d 469, 475 (Tex. App.—Houston [14th Dist.] 2007, no pet.)). The trial court does not abuse its discretion "as long as some evidence of a substantive and probative character exists to support the trial court's decision." *Id.*

As support for his position that the juvenile court abused its discretion, A.C. argues that the evidence was insufficient to require registration because the State did not present expert testimony that A.C. was "a high risk to reoffend" and that the State's witness "only" supervised A.C.

prior to his commitment to the TJJD. A.C., however, has not cited, and we have not found, authority to support his position that the State was required to present expert testimony, and the probation officer testified that she continued to monitor A.C.'s case after her supervision ended. Further, in addition to the probation officer's testimony, A.C.'s current parole officer testified, and much of the evidence was undisputed about A.C.'s participation in sex offender treatment programs and his actions before and after being adjudicated delinquent in 2012 for committing the offense of burglary of a habitation with attempted sexual assault. A.C. had over 10 referrals as a juvenile and was adjudicated for three separate felonies. As to the 2012 offense for burglary of a habitation with attempted sexual assault, according to the probation officer, A.C. told her that he "took four gang members with him to rape the victim," and the probation officer described the offense as "the most thought out [she had] ever seen." And, when he was moved to a halfway house and "released into the community" before his commitment to the TJJD, he was "displaying dangerous behaviors."[2]

---

[2] The probation officer agreed that A.C. was "displaying dangerous behaviors" after moving to the halfway house, testifying:

> [I]t appeared to [them] that the behaviors that he was displaying before were returning fairly quickly. You know, he was—on passes, he was not going home, he was staying at a friend's house, he was using drugs. And a concern of him starting the old pattern of behavior.

She also testified that, during this time period, he was "drinking alcohol, viewing pornography, peeping into windows," which was a "significant concern, because it was part of his pattern."

When asked about "what his cycle was" or "general pattern" "in terms of how he escalated from peeping, that kind of thing, all the way to burglarizing houses," the probation officer testified that "[h]e enjoyed peeping, and that was usually how he picked out his victims."

7

When asked if she thought A.C. was a danger to the community, the probation officer answered, "[b]ased on past behavior, I would say yes."

Concerning A.C.'s participation in sex offender treatment programs, the evidence showed that A.C. completed treatment at the TJJD and the probation officer testified that A.C. was "a smart individual" and "could do well in secure settings, where the guidelines were very set out." The probation officer, however, also testified that A.C. had been "unsuccessfully discharged" from one of the treatment facilities because he "had trouble being truthful and open about his sexual past." During his treatment at that facility, he self-reported 18 rapes and admitted to voyeurism, frottage, beastiality, sexual harassment, and stalking, but "[h]e was still being deceptive, even after admitting those."[3] Concerning treatment after being paroled in November 2015, A.C. "was moving at a slow pace" on his "self-paced [treatment] program" and, at the time of hearing in 2017, he was in the first phase of treatment despite the juvenile court previously making it "clear [to him], with the pending motion to register, that he needed to complete outpatient sex offender treatment." His parole officer testified that A.C. could have already finished the self-paced treatment program but that "[h]e's back in Phase 1. He's working towards getting evaluation. The polygraph, he'll take next month."

As to A.C.'s other actions after being paroled in November 2015, the evidence showed that he had engaged in criminal conduct as well as violating the terms of his parole. It was

---

[3] The probation officer testified:

> [A.C.] had a significantly large number of voyeurism, which is a concern, because it was part of his cycle of sexual abuse. Over 600 times. Sometimes you just guess at that number. Frottage, 600 to 700 times. Some exposure, beastiality, sexual harassment. A lot of stalking, which is concerning. A hundred to 150 times, he reported he stalked.

8

undisputed that, in August 2016, A.C. "cut off his GPS monitor and did not show up for [a prior] scheduled polygraph." According to the probation officer, "after he absconded, he was picked up in Corpus Christi and charged with some offenses as an adult, served his time there, and then he was placed in a [drug] treatment facility through parole." His parole officer similarly testified that, after he was picked up, there was a revocation hearing, and he was sent to a "sanction facility," "a facility that parolees go to when they violate the conditions of parole." She also testified that the GPS monitoring was not in real time[4] and that "[r]ecently he admitted to viewing porn, and that's one of the issues that [they're] discussing now." After he was placed on parole, A.C. also had worked at a retirement center.[5]

Viewing the evidence under the relevant standard of review, we conclude that the record contains sufficient evidence to support the juvenile court's findings that the interests of the public required registration and, thus, we conclude that the trial court did not abuse its discretion by ordering A.C. to do so. *See* Tex. Code Crim. Proc. arts. 62.352(c), .357(b); *In re R.A.*, 465 S.W.3d at 742; *see also In re C.B.*, 2015 Tex. App. LEXIS 7234, at *14–15 (concluding that trial court's order requiring sex offender registration was not abuse of discretion).[6]

---

[4] The parole officer answered, "[e]xactly" when asked, "[s]o [A.C.]'s on this GPS, you can't track it in real time; and if he cuts it off, then he's just in the wind until [they] find him again, basically."

[5] The probation officer expressed concern about A.C. working at a retirement center because A.C. had admitted that "a couple of [his] victims" were "disabled" and "older, that he took advantage of."

[6] As support for his position that the juvenile court abused its discretion by ordering public registration, A.C. cites cases in which he contends private registration was all that the courts required. The courts in those cases, however, did not address private versus public registration, and their analysis is consistent with our analysis here. *See In re L.L.*, 408 S.W.3d 383, 383, 388 (Tex.

9

**CONCLUSION**

Because we conclude that the juvenile court did not abuse its discretion, we overrule A.C.'s sole issue and affirm the juvenile court's order requiring him to register publicly as a sex offender.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:  August 8, 2018

---

App.—El Paso 2011, no pet.) (concluding that juvenile court, that had deferred determination on requiring registration, did not abuse discretion by entering registration order after appellant completed sex offender treatment program); *In re J.D.G.*, 141 S.W.3d 319, 320–21 (Tex. App.—Corpus Christi 2004, no pet.) (concluding that juvenile court, that had deferred determination on requiring registration, did not abuse discretion by entering registration order).