

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00119-CV

_____

IN THE MATTER OF D.K., A CHILD

On Appeal from County Court at Law No. 1
Denton County, Texas
Trial Court No. JV-2013-00432

Before Kerr, Birdwell, and Bassel, JJ.
Opinion by Justice Birdwell

# OPINION

Appellant D.K. was placed on probation in 2013 for aggravated sexual assault of a child, and the juvenile court deferred any decision on whether to require him to register as a sex offender. In 2019, after appellant committed a series of nonsexual criminal acts, the trial court reconsidered and required him to register after all.

Appellant argues that the juvenile court lacked jurisdiction because it rendered the registration order three years after he successfully completed probation and sex offender treatment. In the alternative, he argues that the trial court abused its discretion by relying solely on nonsexual criminal acts as the basis for registration.

We hold that neither the completion of treatment nor the lapse of time destroyed jurisdiction. We further hold that appellant's subsequent criminal offenses—marked as they were with violence and predatory behavior—and other risk factors justified the trial court's decision. We therefore affirm.

## I.

On September 24, 2013, appellant was found to be a child who engaged in delinquent conduct, namely, aggravated sexual assault of a child under the law of parties. The juvenile court placed appellant on probation for two years and ordered him to undergo sex offender treatment. At appellant's request, the juvenile court deferred its decision on whether to require appellant to register as a sex offender.

Appellant was unsuccessfully discharged from outpatient treatment, and after he committed a new offense—assault against his sister—the State moved to modify his

2

probation. By agreement of the parties, appellant's community supervision was extended for an additional two years, and he was placed at Pegasus Schools for inpatient sex offender treatment. He successfully completed that program in April 2016, and his probation ended in August 2016. The juvenile court did not reconsider its previous deferral concerning sex offender registration.

But in 2018, appellant once again found himself before the juvenile court when he was charged with two new offenses: terroristic threat and assault against his brother-in-law. He was again placed on probation, which was to last until his eighteenth birthday. While on probation, appellant was alleged to have committed two more offenses: continuous family violence, for which he was jailed, and harassment of a public servant while in jail.

On January 10, 2019, the State filed a motion to require appellant to register as a sex offender. After hearing the evidence, the juvenile court granted the motion, required appellant to register, and entered detailed findings and conclusions. He appeals.

**II.**

In his first issue, appellant argues that the juvenile court lacked jurisdiction to revisit its deferred decision. He argues that the statute grants the juvenile court jurisdiction to reconsider a deferred registration only during treatment or "on the successful or unsuccessful completion of treatment"; appellant interprets this language to mean that jurisdiction terminates after completion of treatment. According to

3

appellant, the juvenile court therefore lacked jurisdiction because appellant successfully completed treatment years beforehand.

Appellant's argument presents a question of statutory interpretation that we review de novo. *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019). In construing statutes, our primary objective is to give effect to the legislature's intent. *Id.* We interpret statutes according to the language the legislature used, absent an absurd result or a context indicating a different meaning. *Id.*

Generally, a juvenile adjudicated delinquent for aggravated sexual assault is required to register as a sex offender with law enforcement authorities. Tex. Code Crim. Proc. Ann. arts. 62.001(5)(A), .051(a). But on a juvenile's request, the juvenile court must conduct a hearing to determine whether the juvenile's and the public's interests require an exemption from registration. *Id.* art. 62.351(a). After the hearing, the juvenile court may render an order deferring a decision on whether to require registration until the respondent has completed treatment for the sexual offense as a condition of probation. *Id.* art. 62.352(b)(1).

Appellant's argument hinges on the language of the statutory provision that sets the terms by which the juvenile court may reconsider registration following a deferral. The provision in question states that if the court defers a decision on registration,

> the court retains discretion and jurisdiction to require, or exempt the respondent from, registration under this chapter at any time during the treatment or on the successful or unsuccessful completion of treatment, except that during the period of deferral, registration may not be required. Following successful completion of treatment, the respondent is

4

exempted from registration under this chapter unless a hearing under this subchapter is held on motion of the prosecuting attorney, regardless of whether the respondent is 18 years of age or older, and the court determines the interests of the public require registration.

*Id.* art. 62.352(c). To appellant, the first sentence creates a limitation on jurisdiction. As he reads it, the phrase "the court retains discretion and jurisdiction . . . on the successful or unsuccessful completion of treatment" means that the court loses jurisdiction after the completion of treatment.

To reach the construction that appellant desires, though, we would need to replace one of two words: "retains" or "on." For instance, if we replaced the word "retains" with a word such as "loses," then this provision would clearly mean that the court loses jurisdiction on the completion of treatment. The same construction might be called for if we replaced the word "on" with "until," as in "the court retains discretion and jurisdiction . . . *until* the successful or unsuccessful completion of treatment." But that is not what the statute says.

Rather, the statute uses the words "retains" and "on," and we presume that these words were used for a reason. *See City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 260 (Tex. 2018). In this context, the meaning of the word "retains" is self-evident, and the word "on" is most likely a reference to what occurs when something is done, such as "on arriving home, I found your letter"; one dictionary defines "on" as a word used "to indicate a time frame during which something takes place or an instant, action, or *occurrence when something* begins or *is done*." *On*, Webster's Ninth New Collegiate

5

Dictionary 823 (1991) (emphasis added). And the statute clearly specifies what is to occur when treatment is done: "the court retains discretion and jurisdiction." Tex. Code Crim. Proc. Ann. art. 62.352(c). Under its most natural reading, then, this provision is not a limitation upon jurisdiction, but an assurance of it.

This reading is reinforced by comparison with the next sentence, which, again, provides that "[f]ollowing successful completion of treatment," the juvenile is exempted from registration unless a hearing is held on the State's motion and the juvenile court determines that public interest requires registration. *Id.* If jurisdiction terminated after successful completion of treatment, as appellant suggests, that outcome could not be squared with the next sentence's provision that after successful completion of treatment, the court may hold a hearing to determine whether registration should be required. Courts without jurisdiction are not often called upon by the legislature to hold hearings.

In our view, this interpretation is also sound policy. The registration exemption for juveniles is a clemency, to be applied based on the competing equities of public safety and personal hardship. *See id.* art. 62.352(a). This clemency is a matter of discretion that may in some cases be best exercised with a full view of the youth's character and the case's substance as they are revealed over time—not, by necessity, immediately upon the completion of treatment. *See id.* art. 62.352(c). In this case, for instance, compelling the juvenile court to make its determination immediately following appellant's successful completion of treatment and seeming progress at Pegasus Schools

6

might have yielded one resolution of the matter. But allowing the juvenile court to reserve judgment led the court to reach a different conclusion based on a more fully developed set of facts. Three years—and four offenses—later, that seems to have been the wiser course.

For these reasons, we hold as our sister courts have: the juvenile court's jurisdiction to reconsider a deferred registration decision does not terminate following the completion of treatment, and the delay in this case, while not to be applauded, did not destroy jurisdiction. *See In re R.A.*, 465 S.W.3d 728, 738 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("Nonetheless, the statute does not provide a specific deadline for the State to file a motion or for a hearing to be held. We conclude that the seven-and-a-half[-]month delay did not cause the Juvenile Court to lose jurisdiction to determine whether R.A. should be required to register as a sex offender . . . ."); *In re J.M.*, No. 12-10-00159-CV, 2011 WL 6000778, at *1, *3 (Tex. App.—Tyler Nov. 23, 2011, no pet.) (mem. op.) (holding that the juvenile court had jurisdiction to require a juvenile to register as a sex offender, even though the State did not file its motion until four-and-a-half months after the juvenile completed treatment). We overrule appellant's first issue.

## III.

In his second issue, appellant contends that the juvenile court abused its discretion by ordering him to register as a sex offender. He submits that in the years since the aggravated sexual assault, he committed no further sexual offenses and

showed no further signs of sexual deviance. Appellant insists that in light of his subsequent track record, the juvenile court exceeded its discretion by determining that the public interest required registration.

To avoid sex offender registration, the juvenile bears the burden to show by a preponderance of the evidence that protection of the public is not increased by registration or that any potential increase in protection of the public is clearly outweighed by the anticipated substantial harm to the juvenile and the juvenile's family that would result from registration. *In re Z.P.H.*, No. 02-13-00188-CV, 2014 WL 670203, at *2 (Tex. App.—Fort Worth Feb. 20, 2014, no pet.) (mem. op.).

> As we have explained the standard of review,
>
> In an appeal from an order requiring sex-offender registration, our standard of review is whether the juvenile court abused its discretion in requiring registration. In our abuse-of-discretion review, we ask whether the juvenile court (1) had sufficient information upon which to exercise its discretion and (2) erred in its application of discretion. We answer the first question under the well-trod principles of a sufficiency-of-the-evidence review. . . .
>
> If sufficient evidence exists, we then determine under the second inquiry whether the juvenile court made a reasonable decision or an arbitrary one, i.e., a decision made without reference to guiding rules or principles. If the juvenile court did not enter specific findings, we examine the implied findings supporting the court's decision to require registration.

*Id.* (cleaned up) (quoting *In re J.T.W.*, No. 02-12-00430-CV, 2013 WL 3488153, at *2 (Tex. App.—Fort Worth July 11, 2013, no pet.) (mem. op.)); *see In re C.J.H.*, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.) (holding that legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court

8

abused its discretion in a juvenile delinquency case). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate an abuse of discretion. *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (per curiam).

The trial court's detailed findings, which are supported by the evidence, reveal that appellant's troubles began as early as age ten, when he was twice placed in a mental institution to address his fits of rage, his attacks against his brother, and his throwing of knives. In 2013, appellant at age eleven committed the offense which led to his initial term of probation and outpatient treatment: he had held a knife to a ten-year-old girl's throat while another boy sexually assaulted her. Following reports that he had threatened his brother with a knife, he was unsuccessfully discharged from outpatient treatment. And after appellant assaulted his sister and violated other terms of his community supervision, the term of his probation was extended and he was placed in inpatient treatment at Pegasus Schools.

Appellant showed little progress in his first year at Pegasus. Staff regularly made notations such as "maximum risk for ongoing deviant fantasy," "ongoing secret keeping," and "threatening peers and staff with killing them." The tide seemed to turn in fall 2015, when providers began to make notations such as "moderate" and then "high overall progress in treatment," "minimum risk for ongoing secret keeping and ongoing deviant fantasy," and the like. The notations continued to become more positive until his successful discharge in 2016. Appellant was assessed with a low risk

to reoffend in an evaluation performed at discharge, though one part of the summary warned of his continuing "unwillingness to control his impulses (sexual and criminal)." His providers recommended weekly outpatient treatment, and appellant successfully completed that as well. His probation came to an end in August 2016. It was undisputed that appellant had not committed any sexually oriented violations of the terms of his probation.

However, appellant's troubles began to resurface in October 2016, when appellant was returned to a mental hospital for treatment. By the time of his arrest in December 2018, appellant had been admitted for inpatient psychiatric care an estimated fifteen times over the past two years. Appellant's parents had started sleeping in shifts so that one would always be awake in the event that appellant had a manic episode during the night. The most dramatic episode occurred in March 2018, when appellant engaged in a forty-five-minute standoff with police in which he held a piece of glass to his neck, threatening to slit his own throat. In these years, appellant began using marijuana, K2, and alcohol as well.

Appellant's therapeutic prognosis also darkened. One provider noted that appellant was capable of becoming violent and violating the rights of others, and that these traits had "intensified" as he had grown older. A November 6, 2018 assessment diagnosed him with a "high" risk to reoffend, finding that he had several risk factors for criminal behavior such as emulating antisocial peers, blaming others for or minimizing his bad behavior, lacking empathy for his victims, and becoming excited or

10

stimulated when committing crimes. Another assessment by a licensed sex offender treatment provider found that he had a high risk to reoffend violently and a moderate risk to reoffend sexually.

Appellant also accrued new criminal charges. According to appellant's probation officer, he had been following his ex-girlfriend "quite a bit," and she was attempting to avoid him. Appellant began threatening her and left cell phones on her porch with audio recordings in which he outlined plans to kill himself. After being ejected with a criminal trespass warning from the trailer park where his ex-girlfriend lived, appellant would stand at the property line and stare at her or "other children" for "hours on end." One day as she attempted to avoid him, appellant's ex-girlfriend ducked into a house and called someone to pick her up. As she fled, appellant chased the vehicle with some sort of weapon, possibly a BB gun. For his conduct, appellant was charged with terroristic threat.

In another episode, appellant confronted his mother. As appellant screamed in her face, his brother-in-law attempted to intervene, and appellant attacked him and had to be wrestled to the ground. Appellant was charged with assault family violence. For these offenses, appellant was placed on probation until his eighteenth birthday.

While on probation, appellant was alleged to have committed two more offenses. Appellant became angry while watching a Dallas Cowboys game and threw an ashtray at the television. Appellant and his father began to fight, and appellant was arrested for

assault. While in jail, appellant spit in a guard's face, thereby allegedly committing the offense of harassing a public servant.

Appellant acknowledges these new offenses but insists that they do not justify the juvenile court's decision to require registration. He says that these new offenses—all of which are nonsexual—do not align with the safety concerns that justify sex offender registration. According to appellant, sex offender registration "is specifically limited to certain offenses that have a nexus in sexual behavior," and by relying on nonsexual conduct to trigger registration, the juvenile court was "dishonoring" the spirit of the law and abusing its discretion.

First, we disagree with the premise of appellant's argument. Appellant's own expert agreed that the risk to reoffend on a sexual offense was not limited solely to sexually oriented warning signs. Moreover, many Texas courts have considered nonsexual risk factors in determining whether a juvenile court abused its discretion by requiring registration. In one case, the Tyler Court of Appeals upheld registration, relying in part on the appellant's membership in a criminal street gang, his history of physical aggression, his threats to commit a school shooting and to "go to jail for murder," his "significant mental illness," and a negative assessment from his counselor. *In re S.M.*, No. 12-12-00264-CV, 2013 WL 1046891, at *3 (Tex. App.—Tyler Mar. 13, 2013, no pet.) (mem. op.). In another case, the Eastland Court of Appeals relied almost exclusively on nonsexual risk factors to justify registration, citing testimony that some of these risk factors increased the appellant's risk to reoffend sexually:

> Appellant continued to abuse drugs and had not completed his sex offender treatment despite multiple chances over the course of two years. Both his juvenile probation officer and his sex offender therapist testified that substance abuse and failure to complete treatment increase a sex offender's risk of re-offending. In view of his convictions for theft of person (the robbery charge was reduced) and evading arrest, his multiple violations of both his juvenile and adult probations, his continued use of drugs, his second arrest for another robbery and evading arrest, and his failure to complete sex offender treatment, the trial court was well within its discretion to find that appellant should publicly register as a sex offender[.]

*In re C.G.M.*, No. 11-12-00031-CV, 2012 WL 2988818, at *3 (Tex. App.—Eastland July 19, 2012, no pet.) (mem. op.). And this court has upheld a decision to require registration based in part on an appellant's repeated failures to "maintain . . . self-control," his general downward "spiral[]," and his inability to "safely function in the community"; viewing these risk factors in light of the appellant's previous history of holding a knife at a nine-year-old girl's throat while she was raped, among other sexual misdeeds, we felt assured that the decision to require registration was not made without reference to guiding rules and principles. *See Z.P.H.*, 2014 WL 670203, at *3.

Second, even if we were to entertain appellant's argument that there must be some "nexus" between the conduct that guides a registration decision and prurient affairs, appellant has neglected another aspect of his case that has an unquestionable nexus with sex offender registration: he pleaded guilty to aggravated sexual assault of a young girl, an offense for which registration is normally required. Tex. Code Crim. Proc. Ann. art. 62.001(5)(A). Appellant held a knife to a girl's throat as she was raped when he was eleven years old, and appellant's assaultive offenses and aggressive

behavior might have persuaded the juvenile court that the same violent streak was undiminished after years of treatment and probationary allowances. It was appellant's burden to demonstrate that he posed a low risk to the public in general or relative to the burden that registration would place on him and his family. *Id.* arts. 62.351(b), .352(a). Appellant's violence (especially with regard to his sister and other women), his repeated criminal offenses (especially his alarming conduct with regard to his ex-girlfriend), and his bleak therapeutic prospects (especially his recent assessment of a moderate risk to sexually reoffend) could have rationally convinced the juvenile court that this burden was not satisfied. In light of this evidence and the trial court's thoughtful findings based on that evidence, we hold that the juvenile court had sufficient information upon which to exercise its discretion and that the court acted in careful observance of guiding rules and principles. *See Z.P.H.*, 2014 WL 670203, at *2. So holding, we overrule appellant's second issue.

**IV.**

We affirm the juvenile court's order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: October 31, 2019

14